UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAMILTON'S BOGARTS, INC., A Domestic Profit
Corporation, and KATHLEEN POLZIN,

            Plaintiffs,

        v.

THE STATE OF MICHIGAN, THE MICHIGAN
LIQUOR CONTROL COMMISSION, JENNIFER M.
GRANHOLM In Her Official Capacity As Governor
of THE STATE OF MICHIGAN, and NIDA SAMON,
In Her Official Capacity as Chairperson of THE
MICHIGAN LIQUOR CONTROL COMMISSION, a
State Agency,

            Defendants.

Case number 06-10081
Honorable Julian Abele Cook, Jr.

_____

ORDER

On January 6, 2006, the Plaintiffs, Hamilton's Bogarts, Inc. and Kathleen Polzin[1], filed a

complaint against the Defendants, State of Michigan, Michigan Liquor Control Commission,

Jennifer M. Granholm, in her official capacity as Governor, and Nida Simon, in her official

capacity as Chairperson of the Michigan Liquor Control Commission,[2] alleging that Mich. Comp.

Laws § 436.1916 ("§ 916"), Mich. Admin. Code § 436.1409 ("Rule 9"), and Mich. Admin. Code

§ 436.1411 ("Rule 11") (1) violate the overbreadth doctrine of the First Amendment of the United

States Constitution, (2) impermissibly encroach upon the First, Fifth, and Fourteenth Amendments,

---

[1]Unless stated otherwise, Hamilton's Bogarts, Inc. and Kathleen Polzin will be identified
collectively in this Order as the "Plaintiffs."

[2]For the sake of convenience, all of the named Defendants will be identified collectively
as a single entity.

and (3) produce an unconstitutional standard of enforcement of the First Amendment. On January 26, 2006, the Plaintiffs filed a motion for preliminary injunction, asking this Court to prohibit the enforcement of § 916, Rule 9, and Rule 11 while this lawsuit remains pending before the Court.

On December 16, 2005, the State of Michigan amended, approved, and adopted § 916, the relevant provisions of which provide as follows:

> (3) An on-premises licensee shall not allow topless activity on the licensed premises unless the licensee has applied for and been granted a topless activity permit by the commission. This section is not intended to prevent a local unit of government from enacting an ordinance prohibiting topless activity or nudity on a licensed premises located within that local unit of government. This subsection applies only to topless activity permits issued by the commission to on-premises licensees located in counties with a population of 95,000 or less.

> (9) An on-premises licensee issued an extended hours permit shall not allow customers on the licensed premises during the time period provided by the extended hours permit unless the activity, and only that activity, allowed by the extended hours permit is occurring. The issuance of an extended hours permit does not authorize any of the following:
> (a) Topless activity.

> 10) Before the issuance of any permit under this section, the on-premises licensee shall obtain the approval of all of the following:
> (a) The commission.
> (b) Except in cities with a population of 1,000,000 or more, the local legislative body of the jurisdiction within which the premises are located.
> (c) The chief law enforcement officer of the jurisdiction within which the premises are located or the entity contractually designated to enforce the law in that jurisdiction.

> (15) As used in this section:
> (a) "Nudity" means exposure to public view of the whole or part of the pubic region; the whole or part of the anus; the whole or part of the buttocks; the whole or part of the genitals; or the breast area including the nipple or more than ½ of the area of the breast.
> (b) "Topless activity" means activity that includes, but is not limited to,

2

entertainment or work-related activity performed by any of the following persons on the licensed premises in which the female breast area, including the nipple, or more than ½ of the area of the breast, is directly exposed or exposed by means of see-through clothing or a body stocking:

(I) A licensee.

(ii) An employee, agent, or contractor of the licensee.

(iii) A person acting under the control of or with the permission of the licensee.

Mich. Comp. Laws § 436.1916 (2005).

On February 3, 1981, the Liquor Control Commission ("Commission") adopted Rules 9 and 11, which read, in pertinent part, as follows:

Rule 9. (1) An on-premises licensee shall not allow in or upon the licensed premises a person who exposes to public view the pubic region, anus, or genitals or who displays other types of nudity prohibited by statute or local ordinance.

(2) An on-premises licensee shall not allow in or upon the licensed premises the showing of films, television, slides, or other electronic reproductions which depict scenes wherein any person exposes to public view the pubic region, anus, or genitals or displays other types of nudity prohibited by statute or local ordinance. This prohibition does not apply to any publicly broadcast television transmission from a federally licensed station.

Mich. Admin. Code r. § 436.1409 (2006).

Rule 11. (1) An on-premises licensee shall not allow in or upon the licensed premises a   person who performs, or simulates performance of, sexual intercourse, masturbation, sodomy, bestiality, fellatio, or cunnilingus.

(2) An on-premises licensee shall not allow in or upon the licensed premises the showing of films, television, slides, or other electronic reproductions which depict scenes wherein a person performs, or simulates performance of, sexual intercourse, masturbation, sodomy, bestiality, fellatio, or cunnilingus. This prohibition does not apply to any publicly broadcast television transmission from a federally licensed station.

Mich. Admin. Code. § 436.1411 (2006).

Section 909 of the Michigan Liquor Control Code of 1998 reads as follows:

3

(1) Except as otherwise provided in this act, a person, other than a person required to be licensed under this act, who violates this act is guilty of a misdemeanor.

(2) Except as otherwise provided in this act, a licensee who violates this act, or a rule or regulation promulgated under this act, is guilty of a misdemeanor punishable by imprisonment for not more than 6 months or a fine of not more than $500.00, or both.

(3) A person who performs any act for which a license is required under this act without first obtaining that license or who sells alcoholic liquor in a county that has prohibited the sale of alcoholic liquor under section 1107 is guilty of a felony punishable by imprisonment for not more than 1 year or by a fine of not more than $1,000.00, or both.

Mich. Comp. Laws § 436.1909 (2005).

II.

In seeking to determine the merit of a request for the issuance of an injunctive order, a district court is encouraged to consider and evaluate the following four factors: (1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief. *Hamad v. Woodcrest Condominium Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003) (quoting *Nightclubs, Inc. v. City of Paducah,* 202 F.3d 884, 888 (6th Cir.2000)). The Sixth Circuit Court of Appeals has recognized that the preliminary injunction is an "extraordinary remedy, not available unless the plaintiff carries his burden of persuasion as to all of the four prerequisites." *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). However, in those cases which involve First Amendment matters, the crucial inquiry is typically whether the plaintiff has demonstrated a substantial likelihood of success on the merits. *Spoons v. Morckel*, 314 F.Supp.2d 746, 753 (N.D. Ohio 2004); *Nightclubs*, 202 F.3d at 888.

4

III.

The Plaintiffs contend that they are likely to succeed on the merits of their claim because the challenged legislation (1) restrictively defines "nudity," which effectively bans all nude dancing on licensed premises, (2) imposes sanctions upon protected expressive conduct by fully and partially clothed performers, (3) attaches sanctions on protected expressive conduct of literary, historic, artistic, scientific, or other educational value, (4) applies in all "licensed premises," and (5) authorizes unilateral restrictions on expressive conduct by allowing nudity to be defined without notice at the discretion of local communities.

According to a decision by the Supreme Court in 2000, erotic entertainment is within the scope of expression that is protected by the First Amendment. *City of Erie v. Pap's A.M.,* 529 U.S. 277, 289 (2000). The purpose of the overbreadth doctrine is to prevent the chilling of future protected expression. *Staley v. Jones*, 239 F.3d 769, 779 (6th Cir. 2001); *See New York v. Ferber*, 458 U.S. 747, 768 (U.S. 1982) (individuals' whose expression is constitutionally protected will most likely refrain from exercising their rights for fear of criminal prosecution). Typically, "[a] law is overbroad if it 'reaches a substantial number of impermissible applications' relative to [its] legitimate sweep." *Ferber*, 458 U.S. at 771. However, the overbreadth involved must be substantial before the statute is invalidated. *Id.*

Here, the Plaintiffs contend that the challenged legislation includes tens of thousands of venues throughout the State of Michigan, thus making it overinclusive and legally impermissible. Section 916 provides, in part, that "[a]n on-premises licensee shall not allow topless activity on the licensed premises unless the licensee has applied for and been granted a topless activity permit by the commission." However, this section only applies to those counties with a population of

95,000 or less.

In *California v. LaRue,* 409 U.S. 109 (1972), the Supreme Court determined that a state could, in the exercise of its police powers, regulate appropriate places where liquor is sold, and could also prohibit nudity at those establishments that are licensed to sell alcohol.  The *LaRue* Court concluded that such action was reasonable because the ordinance did not ban nudity across the board. Rather, the Court reasoned that the challenged legislation merely regulated behavior at those particular locations.  *Id.*

In the present case, it is evident that the activity of nude dancing is not entirely proscribed, in that such prohibitions are only applicable on licensed premises. As such, it is reasonable for a legislature to proscribe such activity at those locations which have been cited by the Plaintiffs. Since the regulations only target certain locations, this Court must, and does, conclude they are not constitutionally overbroad.

## IV.

A statute that forbids or requires the performance of an act which is so vague that people of common intelligence must guess at its meaning and differ as to its application violates the first essential step of due process of law. *Bouie v. Columbia*, 378 U.S. 347, 351 (U.S. 1964). Additionally, "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Id.* (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939)).  A statute must define the prohibited criminal activity with sufficient particularity so that ordinary individuals can decipher what conduct is in violation of existing law and in a manner that does not advance arbitrary and discriminatory enforcement.  *Kolender v. Lawson,* 461 U.S. 352, 357 (1983).

6

Additionally, "[w]here a statute's literal scope . . . is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (U.S. 1974).

The Plaintiffs submit that the challenged legislation is unconstitutionally vague in two fundamental manners.  First, no ordinary person can determine with any reasonable degree of certainty what conduct the Government seeks to prohibit when it bans conduct that "simulates the performance of" enumerated sexual contacts.  Second, the Plaintiffs maintain that, in defining "nudity," the Government has failed to define the criminal offense with sufficient particularity so that ordinary individuals will be able to fully understand and comply with the prohibited conduct. Essentially, the Plaintiffs submit that the general public is forced to speculate over what conduct may give rise to criminal prosecution.

Regarding the term, "simulates the performance of," the Plaintiffs argue that this phrase is subjective as it is utilized in Rules 9 and 11.  Additionally, they argue that it has a potentially broad scope of proscriptions and encourages the arbitrary exercise of discretion when penalizing someone under these statutes.  Furthermore, the Plaintiffs assert that the meaning of this phrase varies depending upon the conduct that is simulated and observed.

The Michigan Administrative Code provides that "[a]n on-premises licensee shall not allow in or upon the licensed premises a person who performs, or simulates performance of, sexual intercourse, masturbation, sodomy, bestiality, fellatio, or cunnilingus."  Mich. Admin. Code. r. § 436.1411 (2006).  Here, the statute specifically defines the type of conduct that may not be simulated.  The meaning of the term "simulate" can be determined with the help of a dictionary. In *Giovani Carandola, Ltd.* v. *Fox*, 396 F.Supp.2d 630, 661 (M.D.N.C. 2005), the court determined

7

that the term "simulated" was unconstitutionally vague because it did not provide people of ordinary intelligence a reasonable opportunity to understand its coverage.  The American Heritage College Dictionary, third edition, defines this term "simulate" in the following manner:" To have or take on the appearance, form, or sound of; imitate. 2. To make a pretense of; feign. To create a representation or model of."  In the judgment of this Court, the words of the challenged statutes enable an individual of ordinary intelligence to determine the type of conduct that would give rise to criminal prosecution.

V.

A State "has broad power . . . to regulate the times, places, and circumstances under which liquor may be sold."  *New York State Liquor Authority v. Bellanca,* 452 U.S. 714, 715 (1981).  In *Bellanca*, the Court concluded that a local ordinance that banned nude dancing at local alcohol establishments reasonably restricted such activity because the State of New York had a great interest in avoiding disturbances associated with the mixing of alcohol and nude dancing.  452 U.S. 714. Similarly, the Michigan Court of Appeals determined that a rational basis existed for banning nudity from those establishments that are licensed to sell alcohol.  *Charter Twp of Van Buren v. Garter Belt, Inc.,* 258 , Mich. App. 594, 608-18 (2003).

In *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560 (1991), the Court decided that a statute which required dancers to wear G-strings did not violate the First Amendment. The *Barnes* Court concluded that there was a sufficiently important government interest in regulating the non-speech element of expressive conduct; i.e., the prevention of public nudity.

In essence, the purpose of this regulatory laws is to lessen the graphic nature of the dancers' performance and, at the same time, to allow them to pursue their activities.  This minimal restriction

8

is hardly unreasonable and, in fact, it strikes a perfect compromise between the government's interest in regulating erratic behavior and the Plaintiffs desire to engage in such activity.

## VI.

Typically, a deprivation of First Amendment rights, even for minimal periods of time, always constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Plaintiffs argue that they regularly engage in, or offer as entertainment, constitutionally protected expressive activities which they fear will subject them to criminal liability or costly administrative sanctions under the challenged legislation. Additionally, they assert that this fear, along with a threat of criminal or administrative prosecution, is currently chilling the exercise of their First Amendment rights. Furthermore, they submit that damage to constitutionally protected expression has already occurred, and that further damage will occur if the Defendants are not enjoined from enforcing the regulations pending the outcome of a final judgment in this case. Moreover, the Plaintiffs argue that the issuance of a preliminary injunction, pending a final resolution of the matter, will cause no significant harm to the Defendants. Finally, the Plaintiffs assert that granting the injunction will not adversely affect the rights of the public.

Although dancers may not be able to perform their craft in the manner that they desire, these statutes do not violate any of the Plaintiffs' constitutional rights. There is no evidence that any of the Defendants have prevented the Plaintiffs from engaging in a legitimate business activity. Moreover, the Plaintiffs have not demonstrated that they has suffered a pecuniary loss from the preclusion of nude entertainment. Similarly, the individual Plaintiff in this action, Kathleen Polzin, continues to be employed in her chosen line of work. Therefore, it cannot be said that she will suffer any irreparable harm from the denial of the requested preliminary injunction.

9

VIII.

Based on the available record, this Court concludes that the Plaintiffs have not set forth sufficient evidence to justify the imposition of any injunctive relief on the basis of the current record in this cause. Significantly, the Plaintiffs have not sustained their burden of demonstrating a strong likelihood of success on the merits.  The Plaintiffs have also failed to establish that they will suffer irreparable harm if an injunction is not issued.  Accordingly, the Plaintiffs' request for a preliminary injunction must be, and will be, denied.

IT IS SO ORDERED.


Dated: February 13, 2006                    s/ Julian Abele Cook, Jr.
          Detroit, Michigan                          JULIAN ABELE COOK, JR.
                                                              United States District Judge



Certificate of Service

I hereby certify that on February 13, 2006,  I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                                            s/ Kay Alford
                                                            Courtroom Deputy Clerk

10